# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WILLIAM A. CLARK,

                      **Plaintiff,**

    **v.**
                                       **1:13-cv-1305-WSD**

**PNC BANK, N.A., PNC
MORTGAGE CORPORATION,
MCCALLA RAYMER, LLC, and
FEDERAL NATIONAL
MORTGAGE CORPORATION,**

                      **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on McCalla Raymer, LLC's ("McCalla")

Motion for Judgment on the Pleadings [4] and Motion to Stay Discovery [5], and

Federal National Mortgage Corporation ("Fannie Mae") and PNC Bank, N.A.'s

("PNC")[1] (together with McCalla, "Defendants") Motion to Dismiss [10].[2]  Also

before the Court is Plaintiff William A. Clark's ("Plaintiff" or "Clark") "Motion

for Order Denying Motions for Summary Judgment or Permitting Discovery" [16].

---

[1]     PNC asserts that there is no entity named "PNC Mortgage Corporation," but that PNC Mortgage, an unincorporated division of PNC Bank, N.A., joins in the Motion to Dismiss through PNC.  (Mot. to Dismiss at 1 n.1).

[2]     Fannie Mae and PNC move in the alternative for summary judgment. Because the Court finds that Plaintiff has not, and cannot, allege facts sufficient to support a viable claim against Fannie Mae or PNC, the Court does not reach the merits of their alternative basis for relief.

## I.     BACKGROUND

On August 21, 2003, Plaintiff refinanced his existing home mortgage by executing a promissory note (the "Note") in the amount of $114,700, secured by a deed (the "Security Deed") to real property located at 1023 Strawberry Lane, Ellenwood, Georgia (the "Property").  (Am. Compl. [2] at 11-12; Security Deed at 1, 3).  Plaintiff executed the Security Deed in favor of "National City Mortgage Co. dba Accubanc Mortgage" ("National City Mortgage").  (Id.).  Under the terms of the Security Deed, Plaintiff "grant[ed] and convey[ed] to [National City Mortgage] and [National City Mortgage's] successors and assigns, with power of sale, the [Property]."  (Security Deed at 3).

In October 2003, Fannie Mae "purchased the Plaintiff's mortgage loan and acquired an interest in the Plaintiff's [S]ecurity [D]eed."  (Am. Compl. at 12).

On October 1, 2008, National City Mortgage merged into National City Bank.  On November 6, 2009, National City Bank merged into PNC.  (Id.).[3]

---

[3]     See National City Mortgage Capital LLC, and National City Bank, as successor to National City Mortgage Co., Current Report for Oct. 1, 2008, Form 8-K, http://www.sec.gov/Archives/edgar/data/1425796/000095015208007699/l34024ae8vk.htm; Comptroller of the Currency, Conditional Approval #928, Re: Application to merge National City Bank with and into PNC Bank, N.A., http://www.occ.gov/static/interpretations-and-precedents/nov09/ca928.pdf; PNC Financial Services Group, Inc. (parent company of PNC Bank, N.A.), Annual Report for 2010, Form 10-K, http://www.sec.gov/Archives/edgar/data/713676/000119312511051725/d10k.htm (last visited Feb. 3, 2014).  These documents

At some point, Plaintiff defaulted on his loan obligations.  On June 2, 2010, PNC "forwarded the Plaintiff's file to [McCalla] for the scheduling of a nonjudicial foreclosure sale" of the Property.  (Id. at 13).

On July 28, 2010, McCalla, on behalf of PNC, sent Plaintiff a Notice of Sale Under Power ("NSUP") stating that the Property was scheduled to be sold at foreclosure on the first Tuesday in September, 2010, and identifying PNC as Plaintiff's loan servicer and the entity with full authority to negotiate, amend and modify the terms of Plaintiff's mortgage.  (Id. at 14).

On September 7, 2010, PNC conducted a foreclosure sale of the Property, at which PNC was the highest bidder.  PNC, as attorney-in-fact for Plaintiff and pursuant to the power of sale in the Security Deed, executed a Deed Under Power

---

were required by law to be filed with the Comptroller of the Currency and the Securities and Exchange Commission and they are generally available to the public.  The Court takes judicial notice that PNC is the successor by merger to National City Bank and National City Mortgage Co.  See Fed. R. Evid. 201(b)(2) (court may take judicial notice of fact not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 355 (2007) (on a motion to dismiss, court must consider the complaint and matters of which it may take judicial notice); Horowitz v. CitiMortgage, Inc., 533 F. App'x 885, 888 (11th Cir. 2013) (Jordan, C.J., concurring) ("[P]ursuant to Federal Rule of Evidence 201 the district court properly took judicial notice of [defendant's] regulatory filings with both the New York Department of State and the [SEC], and those filings establish the fact of the merger."); Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) (Judgment on the pleadings is appropriate when no material facts are in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts).

conveying the Property to PNC.  (Id. at 15-16).  Also on September 7, 2010, PNC

executed a Special Warranty Deed conveying the Property to Fannie Mae.  (Id.).

On February 6, 2012, the Deed Under Power and Special Warranty Deed were

recorded in the Superior Court of Henry County, Georgia.

On January 27, 2012, McCalla, on behalf of Fannie Mae, filed a

dispossessory action against Clark in the Magistrate Court of Henry County,

Georgia, seeking possession of the Property.[4]  (Id. at 16).  On February 28, 2012,

the Henry County Magistrate Court, after having conducted a hearing at which

Clark's counsel appeared and evidence and testimony was presented, issued an

order and judgment granting possession of the Property to Fannie Mae.  On

March 5, 2012, Clark appealed the Magistrate Court's order.  On March 20, 2012,

because Clark failed to tender the monthly rent amount while his appeal was

pending, as required by the Magistrate Court's order, Fannie Mae requested a Writ

of Possession, which was granted on March 22, 2012, and executed on March 26,

2012.  (Id. at 18).

On February 27, 2012, Plaintiff filed his Complaint [1.1 at 3-16] in the

Superior Court of Fulton County, Georgia,[5] seeking to enjoin "Defendants from

transferring the Plaintiff's property . . . or interfering with [his] right of

---

[4]     No. 2012-579CD.

[5]     No. 2012cv211996.

4

possession," enjoin and stay the Henry County dispossessory action, set aside the foreclosure sale, "restore and return all interest in the [P]roperty to the Plaintiff without restriction," void any writ of possession issued, and recover consequential damages, attorney's fees and costs.

On April 2, 2013, Plaintiff amended his Complaint.  Plaintiff seeks to bring a putative class action and asserts claims for: wrongful foreclosure (Claim I); slander of title (Claim II); slander of credit (Claim III); infliction of emotional distress (Claim IV); quiet title (Claim V); fraud (Claim VI); exceeding authority against McCalla (Claim VII); violation of the duty to fairly exercise the power of sale (Claim VIII); punitive damages (Claim IX); and attorney's fees and costs (Claim X).  Plaintiff asserts that PNC lacked authority to foreclose on the Property because it was not the holder of the Note and Security Deed, and that the Deed Under Power and Special Warranty Deed are not valid.[6]

On April 19, 2013, Defendants removed the Fulton County action to this Court based on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

On April 26, 2013, McCalla filed its Motion for Judgment on the Pleadings [4], and Fannie Mae and PNC filed their Motion to Dismiss [10].

---

[6]     Plaintiff's Complaint and Amended Complaint have substantial characteristics of a shotgun pleading which has the effect of depleting judicial resources and depriving other litigants of timely access to the Court.  The time and effort to consider Plaintiff's undisciplined litany of claims illustrates this impact.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   *Motion for Judgment on the Pleadings*

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001).  In considering a motion for judgment on the pleadings, the allegations contained in the complaint must be accepted as true and the facts and all inferences must be construed in the light most favorable to the nonmoving party.  See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  Motions for judgment on the pleadings based on allegations of a failure to state a claim are evaluated using the same standard as a Rule 12(b)(6) motion to dismiss.  See Sampson v. Washington Mut. Bank, 453 F. App'x 863, 865 n.2 (11th Cir. 2011); Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.").

2.   *Motion to Dismiss*

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)). The Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than

the "mere possibility of misconduct." <u>Am. Dental</u>, 605 F.3d at 1290 (quoting

<u>Iqbal</u>, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible." <u>Id.</u> at 1289 (quoting <u>Twombly</u>,

550 U.S. at 570).

    B.    <u>Analysis</u>[7]

        1.    *Defendants' Standing to Foreclose*

The crux of Plaintiff's claims is that PNC lacked standing to foreclose on the

Property.  It is undisputed that Plaintiff executed the Security Deed in favor of

---

[7]    To the extent Plaintiff argues that Defendants' Motion for Judgment on the Pleadings and Motion to Dismiss are barred by *res judicata*, the Fulton County Superior Court's order denying Defendants' previous motions to dismiss [1.12 at 17-19] was not a "judgment" or "previous adjudication on the merits" of this case. <u>See, e.g.</u>, O.C.G.A. § 9–12–40 ("a *judgment* of a court of competent jurisdiction shall be conclusive between the same parties and their privies . . . .") (emphasis added); <u>Karan, Inc. v. Auto-Owners Ins. Co.</u>, 629 S.E.2d 260, 262 (Ga. 2006) ("Three prerequisites must be satisfied before *res judicata* applies—(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction."); <u>Waldroup v. Greene County Hosp. Auth.</u>, 463 S.E.2d 5, 7 (Ga. 1995) ("Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."); <u>cf.</u> <u>In re Piper Aircraft Corp.</u>, 244 F.3d 1289, 1296 (11th Cir. 2001) (*res judicata* "will bar a subsequent action if . . . there was a final judgment on the merits"); <u>Vintilla v. United States</u>, 931 F.2d 1444 (11th Cir. 1991) (district court's initial denial of defendant's motion to dismiss did not become law of the case so as to preclude court from later granting the motion); <u>Gregg v. United States Indus., Inc.</u>, 715 F.2d 1522, 1530 (11th Cir. 1983) ("[L]aw of the case applies only where there has been a final judgment.").  It is troubling that Plaintiff's counsel asserts an argument that does not have a sound legal basis.

National City Mortgage.  (Security Deed at 1).  Under the terms of the Security Deed, Plaintiff "grant[ed] and convey[ed] to [National City Mortgage] and [National City Mortgage's] successors and assigns, with power of sale, the [Property]."  (Id. at 3).

On October 1, 2008, National City Mortgage merged into National City Bank.  On November 6, 2009, National City Bank merged into PNC.  (Am. Compl. at 12).  As a result of the mergers, PNC acquired the assets, rights and liabilities of National City Mortgage, including the Security Deed.  To the extent Plaintiff argues that PNC lacked authority to foreclose on the Property in the absence of a recorded assignment of the Security Deed to PNC, the merger itself was sufficient to transfer National City Mortgage's property interests to PNC.  The Supreme Court of Georgia recently stated:  "When corporations merge, state law provides that the title to each corporation's property vests in the surviving corporation without any conveyance, transfer, or assignment . . . . Similarly, federal banking law provides that the corporate existence of merging banks shall continue in the 'receiving association,' which is considered the same corporation as its predecessor."  Nat'l City Mortg. Co. v. Tidwell, 749 S.E.2d 730, 733 (Ga. 2013) (citing O.C.G.A. §§ 7-1-536, 14-2-1106; 12 U.S.C. § 215a(e)).  Specifically, the National Banking Act provides:

> The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and *such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger*.  All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property . . . shall be transferred to and vested in the receiving association *by virtue of such merger without any deed or other transfer*.  The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests . . . in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . .

12 U.S.C. § 215a(e) (emphasis added).  As a result of the mergers of National City Mortgage into National City Bank, and National City Bank into PNC, by operation of law, PNC acquired the assets, rights and liabilities of National City Mortgage, including the Security Deed.  PNC is thus entitled to exercise the power of sale in the Security Deed.[8, 9]

_____

[8]   This is further supported by O.C.G.A. § 23-2-114, which provides that, "[u]nless the instrument creating the power specifically provides to the contrary, a . . . *successor of the grantee in a mortgage*, deed of trust, deed to secure debt, bill of sale to secure debt, or other like instrument, *or an assignee thereof*, or his personal representative, heir, heirs, legatee, devisee, *or successor may exercise any power therein contained*."  O.C.G.A. § 23-2-114.  The Security Deed discloses no intent on the part of Plaintiff to restrict National City Mortgage from assigning its rights and it does not prohibit the transfer of National City Mortgage's rights to its successor.  Rather, Plaintiff unequivocally granted to National City Mortgage, its successors or assigns, the right to foreclose and sell the Property in the event of Plaintiff's default.

[9]   That the foreclosure sale was conducted by "PNC Bank, National

Plaintiff next argues that PNC lacks standing to foreclose on the Property because it is "merely the servicer," not the "secured creditor," and it does not also hold the Note.  The Supreme Court of Georgia has expressly rejected this argument and held that "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."  You v. JP Morgan Chase Bank, 743 S.E.2d 428, 433 (Ga. 2013); see also Harris v. Chase Home Fin., LLC, 524 F. App'x 590 (11th Cir. 2013) (applying You).[10, 11]

---

Association sbm [successor by merger] to National City Bank sbm [successor by merger] to National City Mortgage Co. dba Accubanc Mortgage" further supports that PNC, by operation of law, now stands in the place of National City Mortgage as the holder of the Security Deed.  (Am Compl. at 15, 16).

[10]    To the extent Plaintiff asserts that PNC could not acquire any interest in the Security Deed as a result of the merger because, at the time of the merger, Fannie Mae owned Plaintiff's Note and therefore must have owned Plaintiff's Security Deed, Georgia law does not require that a promissory note and the corresponding security deed be assigned to the same entity.  See, e.g., You, 743 S.E.2d at 431-432 ("splitting" ownership of a note from ownership of a deed not expressly prohibited under Georgia law); Montoya v. Branch Banking & Trust Co., No. 1:11-cv-1869, 2012 WL 826993, at *5 (N.D. Ga. Mar. 9, 2012) (rejecting wrongful foreclosure claim to the extent it was based on a note-splitting theory).  Plaintiff does not allege, and it does not appear, that the Security Deed was assigned to Fannie Mae prior to foreclosure.

Georgia law requires that "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale . . . ."  O.C.G.A. § 44-14-162(b).  Thus, at the time of foreclosure, even if Fannie Mae "owned" Plaintiff's Security Deed, the only

Plaintiff has not, and cannot, assert a viable claim under any legal theory based on Defendants' alleged lack of authority to foreclose on the Property. Insofar as Plaintiff bases his claims for wrongful foreclosure, slander of title, slander of credit, infliction of emotional distress, quiet title, fraud, exceeding authority, and failure to fairly exercise the power of sale, on Defendants' alleged lack of authority to foreclose on the Property, these claims are required to be dismissed.

2.     *Wrongful Foreclosure and Failure to Fairly Exercise the Power of Sale (Claims I and VIII)*

To support a claim for wrongful foreclosure under Georgia law, a plaintiff must establish: (1) the foreclosing party owes a legal duty to the plaintiff; (2) breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages.  All Fleet Refinishing, Inc. v. West Georgia Nat'l Bank, 634 S.E.2d 802, 807 (Ga. Ct. App. 2006).  "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor

---

recorded "security instrument or assignment thereof" for the Property was the Security Deed, by which Plaintiff expressly granted the power of sale to National City Mortgage and National City Mortgage's successors and assigns—that is, to PNC.

[11]     To the extent Plaintiff relies on Reese v. Provident Funding Assocs., LLP, 730 S.E.2d 551 (Ga. Ct. App. 2012), to support that only a secured creditor who holds both the security deed and promissory note can foreclose on a property, the Georgia Supreme Court vacated and remanded that decision for reconsideration in light of You.  See Reese, No. S12C2028, Order of May 20, 2013 (Ga. 2013).

has no legal right to foreclose." <u>DeGoyler v. Green Tree Serv., LLC</u>, 662 S.E.2d 141, 147 (Ga. Ct. App. 2008) (quoting <u>Brown v. Freedman</u>, 474 S.E. 2d 73, 75 (Ga. Ct. App. 1996)).

Here, it is undisputed that Plaintiff defaulted on his loan obligations.  Failure to make the proper loan payments or tender the amount due defeats any claim for wrongful foreclosure.  <u>See</u> <u>Harvey v. Deutsche Bank Nat'l Trust Co.</u>, No. 1:12-cv-1612, 2012 WL 3516477, at *2 (N.D. Ga. Aug. 14, 2012) ("When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure."); <u>Heritage Creek Dev. Corp. v. Colonial Bank</u>, 601 S.E. 2d 842 (Ga. Ct. App. 2004) (plaintiff's injury was "solely attributable to its own acts or omissions both before and after the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale).  Plaintiff's claim for wrongful foreclosure is required to be dismissed for this additional reason.[12, 13]

---

[12]    To the extent Plaintiff argues that foreclosure was wrongful because the NSUP did not identify Fannie Mae as the "investor" on Plaintiff's loan and did not identify the "secured creditor," Georgia law requires only that a foreclosure notice identify the individual or entity with the full authority to negotiate, amend, and modify the terms of Plaintiff's loan.  <u>See, e.g.</u>, O.C.G.A. § 44-14-162.2(a); <u>You</u>, 743 S.E.2d at 74-75.

[13]    To the extent Plaintiff also asserts that the completed dispossessory action was wrongful and seeks to have the Writ of Possession overturned, the Court lacks jurisdiction under the <u>Rooker-Feldman</u> doctrine to do so.  Federal district courts

3.     *Slander of Title*

Under Georgia law, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom."  O.C.G.A. § 51-9-11.  To support an action for slander of title, a plaintiff must allege "the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." Cornelius v. Bank of Am., N.A., No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *4 (N.D. Ga. Sept. 27, 2012) (quoting Latson v. Boaz, 598 S.E.2d 485, 487 (Ga. 2004)).  A plaintiff who asserts a claim of slander of title can "recover only such special damages as he actually sustained as a consequence of the alleged wrongful acts, and he is required to plead them plainly, fully, and distinctly."  Id.

Plaintiff asserts that the NSUP was "slanderous and fraudulent" because it misrepresented that PNC had authority to foreclose on the Property.  The Court has already found that PNC, as the holder of the Security Deed, was entitled to exercise the power of sale in the Security Deed.  Plaintiff also has not asserted that he suffered special damages as a result of the publication of any allegedly false

---

"generally lack jurisdiction to review a final state court decision."  Doe v. Fla. Bar, 630 F.3d 1336, 1341 (11th Cir. 2011) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) & Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)).

statements.  Failure to adequately plead special damages defeats a claim for slander of title.  See Cornelius, 2012 WL 4468746, at *4 (dismissing slander of title claim where plaintiff simply claimed millions of dollars in damages without further explanation); Jackman v. Hasty, No. 1:10-cv-2485-RWS, 2011 WL 854878, at *6 (N.D. Ga. Mar. 8, 2011) (dismissing a slander of title claim for failure to allege special damage); Harmon v. Cunard, 378 S.E.2d 351 (1989) (insufficient proof of special damages where no specific figures were offered for the damage allegedly suffered).  This claim is required to be dismissed.

### 4.  *Slander of Credit*

Defendants argue that Plaintiff's claim for slander of credit under Georgia law must be dismissed because it is preempted by The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  Plaintiff does not oppose, or otherwise respond to, Defendants' argument.  In his Response, Plaintiff conclusorily asserts that "[t]he cases cited by the Defendants on this issue are not applicable."  (Pl's Resp. [19.1] at 18).[14]  Failure to respond to an opposing party's argument results in abandonment of the claim.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); see also LR 7.1(B),

---

[14]    Plaintiff's Response to McCalla's Motion for Judgment on the Pleadings does not address McCalla's argument for dismissal of this claim.

NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  Plaintiff has abandoned his claim for slander of credit and this claim is required to be dismissed.[15]

---

[15]     Even if he had not abandoned it, Plaintiff's claim under Georgia law for slander of credit must be dismissed because it is preempted by the FCRA.  The FCRA provides: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."  15 U.S.C. § 1681t(b)(1)(F).  Section 1681s–2 prohibits furnishers from providing "any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s–2.  Plaintiff asserts that Defendants "impaired the Plaintiff's credit causing him to lose the ability to have good credit" when they knowingly reported false information, including that Plaintiff owed a debt to PNC.  (Am. Compl. at 17-18).  This conduct falls within the provisions of Section 1681s-2 because it relates to Defendants' responsibilities as furnishers of information to consumer reporting agencies.  The FCRA thus preempts Plaintiff's slander of credit claim and this claim is required to be dismissed for this additional reason.  See, e.g., Howard v. DirecTV Group, Inc., No. CV 109–156, 2012 WL 1850922, at *7 (S.D. Ga. May 21, 2012) (state-law defamation claim preempted by FCRA where plaintiff alleged that defendants generated false, malicious and defamatory documents and submitted them to credit reporting agencies); Horton v. HSBC Bank, No. 1:11-cv-3210, 2013 WL 2452273 (N.D. Ga. June 5, 2013) (Thrash, J. adopting Walker, M.J.) (amendment to complaint denied as futile where FCRA preempted proposed state law claims; claims arose from and were related to defendants' alleged failure to properly report information about plaintiff's accounts to credit bureaus); cf. Gibson v. Decatur Fed. Sav. & Loan Ass'n, 508 S.E.2d 788 (Ga. Ct. App. 1998) (FCRA preempted borrowers' state-law claim for libel based on bank's allegedly false reporting to credit agencies that they were delinquent on their mortgage).

5.     *Infliction of Emotional Distress*

Under Georgia law,

the burden which the plaintiff must meet in order to prevail [on a claim for intentional infliction of emotional distress] is a stringent one.  To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  The defendant's conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

Steed v. Fed. Nat'l Mortg. Corp., 689 S.E.2d 843, 851-852 (Ga. Ct. App. 2009)

(quoting Frank v. Fleet Fin. Inc. of Ga., 518 S.E.2d 717, 720 (Ga. Ct. App. 1999)).

Plaintiff alleges that "Defendants' actions in illegal and wrongful foreclosure upon [the Property] and dispossessing the Plaintiff, instituted [intentionally], fraudulently and/or negligently," caused Plaintiff "severe emotional distress." (Am. Compl. at 18).  The crux of Plaintiff's Amended Complaint is that Defendants wrongfully foreclosed on the Property and instituted dispossessory proceedings when they knew that PNC allegedly lacked standing to foreclose on the Property because it was not the holder of the Note and Security Deed.  This simply is not the kind of action that rises to the level of extreme, outrageous, atrocious or intolerable conduct required to support a claim for intentional

infliction of emotional distress.  See, e.g., Frank, 518 S.E.2d at 720 (breach of

contract to re-sell property to homeowners following foreclosure sale and

institution of dispossessory proceedings not the kind of egregious conduct

necessary to support intentional infliction of emotional distress); Ingram v. JIK

Realty Co., 404 S.E.2d 802 (Ga. Ct. App. 1991) (affirming grant of summary

judgment on intentional infliction claim where defendant's conduct consisted of

wrongfully foreclosing on plaintiff's property); Thomas v. Ronald A. Edwards

Constr. Co., 293 S.E.2d 383 (1982) (filing a dispossessory warrant does not

constitute the kind of egregious conduct necessary to sustain a claim for intentional

infliction of emotional distress).  Plaintiff fails to state a claim for infliction of

emotional distress and this claim is required to be dismissed.[16]

      6.    *Quiet Title*

The purpose of Georgia's Quiet Title Act of 1966 is "to create a procedure

for removing any cloud upon the title to land . . . and for readily and conclusively

---

[16]      To the extent Plaintiff asserts a claim for negligent infliction of emotional distress, "[t]here is no independent tort in Georgia for negligent infliction of emotional distress."  Holbrook v. Stansell, 562 S.E.2d 731, 732 (Ga. Ct. App. 2002) (citing Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82 (Ga. 2000)).  While "[a] plaintiff may recover damages for emotional distress based upon an injury to property that results in pecuniary loss," Plaintiff cannot state a claim for infliction of emotional distress because, as the Court already found, the foreclosure sale was not wrongful.  See Nationwide Mut. Ins. Co. v. Lam, 546 S.E.2d 283, 284-85, 286 n.5 (Ga. Ct. App. 2001) (Pecuniary loss must result from a trespass, "an unlawful interference with one's person, property, or rights.").

establishing that certain named persons are the owners of all the interests in land
. . . ."  O.C.G.A. § 23-3-60.  In an action for quiet title, "a plaintiff must assert that
he holds some current record title or current prescriptive title, in order to maintain
his suit."  Smith v. Georgia Kaolin Co., Inc., 498 S.E.2d 266, 267-68 (Ga. 1998).

Plaintiff cannot state a claim for quiet title to the Property because, having
found that the foreclosure sale was not wrongful, Plaintiff lacks any rights in the
Property.  A valid foreclosure of a security deed vests legal title in the purchaser
and divests all of the grantor's rights in the property.  See, e.g., Cummings v.
Johnson, 129 S.E.2d 762 (Ga. 1963); Rhodes v. Anchor Rode Condo.
Homeowner's Assn. Inc., 508 S.E.2d 648 (Ga. Ct. App. 1998).

Even if the Property had not been sold at foreclosure, Plaintiff's claim for
quiet title must be dismissed because any right to legal title to the Property he has
is subordinate to PNC's rights under the Security Deed.  When he executed the
Security Deed, Plaintiff granted to National City Mortgage, and National City
Mortgage's successors and assigns, legal title to the Property until the debt secured
by the Security Deed is paid in full.  Plaintiff retained only the equitable right of
redemption and the right of possession.  See O.C.G.A. § 14-44-60 ("[T]he
conveyance of real or personal property shall pass the title of the property to the
grantee until the debt or debts which the conveyance was made to secure shall be

19

fully paid . . . with the right reserved by the grantor to have the property reconveyed to him upon the payment of the debt. . . ."); <u>see also</u> <u>McCarter v. Bankers Trust Co.</u>, 543 S.E.2d 755, 757 (Ga. Ct. App. 2000).  Plaintiff does not allege, and the record does not support, that the Security Deed is not valid or that he satisfied his underlying loan obligations.  Plaintiff therefore lacks current record title or current prescriptive title to the Property, and his claim for quiet title is required to be dismissed.[17]

### 7.  *Fraud*

In Georgia, plaintiffs alleging fraud must establish five (5) elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." <u>Baxter v. Fairfield Fin. Servs.</u>, 704 S.E.2d 423, 429 (Ga. Ct. App. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure further requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The Eleventh Circuit has consistently held:

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations

---

[17]    That the Deed Under Power and Special Warranty Deed were not recorded within 90 days of the foreclosure sale, as required by O.C.G.A. § 44-14-160, does not entitle Plaintiff to quiet title to the Property.  Those documents do not affect the validity of the Security Deed or the authority of PNC, as a result of the merger with National City Mortgage, to exercise the power of sale in the Security Deed.

> or what omissions were made, and (2) the time and place of each such
> statement and the person responsible for making (or, in the case of
> omissions, not making) same, and (3) the content of such statements
> and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud.

Thomas v. Pentagon Federal Credit Union, 393 F. App'x 635, 638 (11th Cir. 2010)

(mortgagor failed to allege facts with sufficient particularity to state fraud claim

against mortgagee where he did not identify any specific statements made by

mortgagee and failed to identify time and place of an omission, person responsible

for making an omission, and what mortgagee obtained as a consequence of fraud);

see also Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).

Plaintiff alleges that Defendants falsely represented that Plaintiff owed a

debt to PNC and that PNC had the authority to foreclose on the Property.  (Am.

Compl. at 20-21).  Plaintiff asserts that Defendants made these misrepresentations

"to induce the Plaintiff to refrain from challenging the Defendants [sic] . . . alleged

rights in the [Property] or the ensuing foreclosure sale or dispossessory action."

(Id. at 21).

Plaintiff does not allege any false statement made by Defendants or what

Defendants gained by allegedly making this statement.  Plaintiff does not allege

that he is current on his loan and it is clear that PNC, as the holder of the Security

Deed and the servicer of Plaintiff's loan, was entitled to receive Plaintiff's

mortgage payments and foreclose on the Property in the event of Plaintiff's default on his loan obligations.  Plaintiff does not allege any action he took, or refrained from taking, in response to an allegedly false representation by Defendants.[18] Plaintiff has not pled the five elements of fraud with the specificity required under Rule 9 of the Federal Rules of Civil Procedure and Plaintiff otherwise fails to allege facts sufficient to support a claim of fraud under Georgia law.  Plaintiff's fraud claim is required to be dismissed.

### 8.   *Whether McCalla Exceeded Its Authority*

Plaintiff asserts that McCalla exceeded its authority by "prepar[ing] the foreclosure deed and special warranty deed in favor of [Fannie Mae]" and initiating dispossessory proceedings when McCalla knew that PNC lacked authority to foreclose on the Property and that the foreclosure sale was wrongful. (Am. Compl. at 23-24).  It is clear that PNC, as the holder of the Security Deed, was entitled to foreclose on the Property, and that Fannie Mae, as the purchaser of the Property after foreclosure, was entitled to a writ of possession for the Property. Because Plaintiff fails to state a claim for wrongful foreclosure or wrongful dispossession, Plaintiff cannot state a claim against McCalla for exceeding its

---

[18]     Plaintiff fails also to show that he suffered damages because of his alleged reliance, particularly because it appears Plaintiff had been living in the Property without making any mortgage payments from at least June 2010 to March 2012.

authority by conducting the foreclosure sale on behalf of PNC and prosecuting the dispossessory action on behalf of Fannie Mae.  Plaintiff's claim against McCalla for exceeding its authority is required to be dismissed.

9.    *Punitive Damages and Attorney's Fees*

Plaintiff is not entitled to an award of punitive damages because he failed to state any claims upon which relief may be granted.   See O.C.G.A. § 51-12-5.1(b); Martin v. Martin, 600 S.E.2d 682, 683 (Ga. Ct. App. 2004) ("Punitive damages cannot be awarded in the absence of any finding of compensatory damages."). Plaintiff also is not entitled to attorney's fees and costs because he is not a prevailing party and his claims have been dismissed.  See O.C.G.A. § 13-6-11; Amstead v. McFarland, 650 S.E.2d 737 (Ga. Ct. App. 2007) (attorney's fees not available where general damages not awarded); cf. Fed. R. Civ. P. 54.

11.    *Injunctive Relief*

A claim for preliminary injunctive relief requires a showing of  "a substantial likelihood of success on the merits of the underlying case," Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011), while a permanent injunction requires actual success on the merits, United States v. Endotec, Inc., 563 F.3d 1187, 1194 (11th Cir. 2009).  Because Plaintiff's claims have been dismissed on

the merits, he cannot demonstrate likely or actual success on the merits, and his claim for injunctive relief is required to be dismissed.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that McCalla Raymer, LLC's Motion for Judgment on the Pleadings [4] is **GRANTED.**

**IT IS FURTHER ORDERED** that Federal National Mortgage Corporation and PNC Bank, N.A.'s Motion to Dismiss [10] is **GRANTED.**

**IT IS FURTHER ORDERED** that McCalla Raymer, LLC's Motion to Stay Discovery [5] and Plaintiff William A. Clark's "Motion for Order Denying Motions for Summary Judgment or Permitting Discovery" [16] are **DENIED AS MOOT.**


**SO ORDERED** this 3rd day of February, 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE